IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOSE ANTONIO ALVARADO, | ) | No. 33130-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF LICENSING, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — This case turns on what type of evidence the Department of

Licensing (DOL) must produce at a contested hearing in order to disqualify a commercial

driver's license (CDL) based on a positive drug test. Jose Alvarado argues that principles

of statutory interpretation and the constitutional right of due process require the DOL

disclose the laboratory data used to generate a test result instead of merely the test's

conclusions. Finding no such requirement under either standard, we affirm Mr.

Alvarado's CDL disqualification.

## FACTS

Jose Alvarado applied to work as a commercial driver for the city of Sunnyside, an

employer subject to the federal workplace drug and alcohol program, 49 C.F.R. pt. 40.

As part of the federal program, Mr. Alvarado submitted a preemployment drug test. The DOL subsequently received a report from a medical review officer stating Mr. Alvarado had tested positive for cocaine.

Upon receiving the medical review officer's report, the DOL notified Mr. Alvarado it would disqualify his CDL. Mr. Alvarado requested a hearing to challenge the proposed disqualification. At the administrative hearing, Mr. Alvarado did not testify, present witness testimony, or submit evidence to demonstrate the result was a false positive. Rather, he argued the matter should be dismissed because RCW 46.25.125(4) requires the DOL to produce a copy of the full laboratory report specifying the quantitative values of his drug test, not merely a report documenting a positive test result. The hearing officer disagreed and upheld the DOL's disqualification. Mr. Alvarado appealed to the superior court. At this hearing, Mr. Alvarado reargued his position but again did not present evidence. The superior court affirmed the disqualification. Mr. Alvarado filed this timely appeal.

## ANALYSIS

### A. RCW 46.25.125

Mr. Alvarado argues the DOL violated RCW 46.25.125 when it failed to produce a copy of the laboratory data report at his disqualification hearing. According to Mr.

Alvarado, it was not sufficient for the medical review officer to sign a report stating that Mr. Alvarado had tested positive for cocaine. Instead, he argues the plain language of the Washington statute requires disclosure of the quantitative data utilized by the drug laboratory to justify the positive test result.

Issues of statutory construction are questions of law reviewed de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). In construing a statute, the court's fundamental objective is to ascertain and carry out the legislature's intent. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). "Statutory interpretation begins with the statute's plain meaning," which is "discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* (internal quotation marks omitted). A court's inquiry ends if the statute is unambiguous after reviewing its plain meaning. *Id.*

The statute at issue here outlines the hearing rights of a CDL holder who has received a notice of disqualification based on a positive drug or alcohol test. It provides as follows:

> For the purposes of this section, or for the purpose of a hearing de novo in an appeal to superior court, the hearing must be limited to the following issues: (a) Whether the driver is the person who is the subject of the report;

(b) whether the motor carrier, employer, or consortium has a program that is subject to the federal requirements under 49 C.F.R. 40; and (c) whether the medical review officer or breath alcohol technician making the report accurately followed the protocols established to verify or confirm the results, or if the driver refused a test, whether the circumstances constitute the refusal of a test under 49 C.F.R. 40. Evidence may be presented to demonstrate that the test results are a false positive. For the purpose of a hearing under this section, *a copy of a positive test result with a declaration by the tester or medical review officer or breath alcohol technician stating the accuracy of the laboratory protocols followed to arrive at the test result is prima facie evidence*:

(i) Of a verified positive drug test or positive alcohol confirmation test result;

(ii) That the motor carrier, employer, or consortium has a program that is subject to the federal requirements under 49 C.F.R. 40; and

(iii) That the medical review officer or breath alcohol technician making the report accurately followed the protocols for testing established to verify or confirm the results.

RCW 46.25.125(4) (emphasis added).

The crux of the parties' dispute pertains to what is meant by "a copy of a positive test result." Mr. Alvarado argues this language refers to the quantitative data relied on to reach a positive test result. Focusing on the statute's use of the word "result," we disagree. A "result" is defined as "something obtained, achieved, or brought about by calculation, investigation, or similar activity (as an answer to a problem or knowledge gained by scientific inquiry)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

1937 (1993). In other words, a result is the conclusion drawn from data analysis. It is not the analysis itself. Because the statute only requires a copy of the test "result," it does not contemplate disclosure of the quantitative data or information utilized to reach a positive test result.

The context of the applicable statute solidifies this interpretation. As the parties agree, chapter 46.25 RCW was written to comply with the federal Commercial Motor Vehicle Safety Act of 1986 (CMVSA), Pub. L. No. 99-570, title XII.[1] Indeed, the statute at issue, RCW 49.25.125, references 49 C.F.R. 40, the federal regulations governing the CMVSA. Looking at these regulations, the medical review officer responsible for reporting a drug test is specifically instructed to report the "[r]esult of the test" as "positive, negative, dilute, refusal to test, [or] test cancelled." 49 C.F.R. § 40.163(c)(6).[2] Again, it is the conclusion that must be reported, not the data used to generate the conclusion. This is consistent with federal regulations which strictly limit the medical review officer's authority to disclose the quantitative values used to arrive at a test result. 49 C.F.R. § 40.163(g).

---

[1] There are no currently effective sections of the CMVSA. The relevant law is now codified at 49 U.S.C. § 31306.

[2] The federal regulations refer to the medical review officer by the abbreviation MRO.

Mr. Alvarado correctly points out that, under 49 C.F.R. § 40.87, the medical review officer cannot report a positive test result unless the amount of drugs in a test sample meets specified cutoff concentrations. However, the fact that the medical review officer's conclusions must be consistent with certain guidelines does not mean the officer's report must explain how those guidelines were met in a given case.

## B. Due Process

Apart from his statutory argument, Mr. Alvarado contends due process requires the DOL to produce a copy of the full laboratory report at a CDL disqualification hearing. Constitutional challenges are questions of law subject to de novo review. *Evans*, 177 Wn.2d at 191.

The State must provide due process when it deprives an individual of life, liberty, or property. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. Driver's licenses, including CDLs, are property interests protected by procedural due process principles. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006). The fundamental components of due process are notice and an opportunity to be heard. *Watkins v. Dep't of Licensing*, 187 Wn. App. 591, 602, 349 P.3d 946 (2015). These are not mere formalities. Due process must be "meaningful and appropriate to the nature of the case." *Svendgard v. Dep't of Licensing*, 122 Wn. App. 670, 681, 95 P.3d 364 (2004).

6

We consider three factors when analyzing whether the State provided due process: (1) the private interest that will be affected by the government action, (2) the risk of erroneously depriving a person of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the State's interest, including the function involved and fiscal and administrative burdens the additional requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Mr. Alvarado's challenge goes to the second *Mathews* factor. According to Mr. Alvarado, without disclosure of a full laboratory report, the hearing rights afforded by statute are reduced to nothing more than a rubber stamp of a medical review officer's report. We disagree. For one thing, the medical review officer's report is not a meaningless piece of paper. In Mr. Alvarado's case, it was signed under penalty of perjury by a medical doctor, verifying that federal protocols were met in reaching a positive test result. In addition, Mr. Alvarado was afforded ample ability to contest the accuracy of the report. He was entitled to demand a copy of his full laboratory report, including quantitative data, prior to the disqualification hearing. 49 C.F.R. § 40.329 (copies must be disclosed within 10 business days of request). At the hearing, Mr. Alvarado had the right to testify, present testimony from witnesses, and submit exhibits.

RCW 46.20.332, .334. These safeguards were sufficient to protect Mr. Alvarado from an erroneous deprivation of his CDL, as required by due process.

Because the State afforded Mr. Alvarado a meaningful procedure for contesting the disqualification of his CDL, his due process claim necessarily fails. Although Mr. Alvarado has an important property interest in his CDL, the weight of this interest is tempered by the fact that a CDL holder's disqualification is stayed during the pendency of the hearing process. RCW 46.25.125(6); *see City of Redmond v. Moore*, 151 Wn.2d 664, 670-71, 91 P.3d 875 (2004). Furthermore, the State has a significant interest in maintaining safety on the public roadways. The purpose of chapter 46.25 RCW is to be "liberally construed to promote the public health, safety, and welfare." RCW 46.25.005. This strong interest weighs against requiring production of evidence that is not required by statute and is easily accessed by the CDL holder.

The decision of the superior court is affirmed.

_____
Pennell, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, J.                    Fearing, J.

8