# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SOUTHWICK, INC., a Washington corporation, | No. 49691-7-II |
| Petitioner, | |
| v. | |
| WASHINGTON STATE, AND ITS DEPARTMENT OF LICENSING BUSINESS AND PROFESSIONS DIVISION, WASHINGTON STATE FUNERAL AND CEMETERY BOARD. | PUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Southwick, Inc. appeals from the superior court's order affirming the Washington State Funeral and Cemetery Board's (Board) decision sanctioning Southwick for moving cremains[1] to new cemetery plots without notifying the families. Southwick argues that its procedural due process rights were violated when the presiding officer originally granted summary judgment in favor of the Department of Licensing (Department) based on RCW 68.50.140 when that statute was not cited in the original notice of violation or argued at the summary judgment hearing. Southwick also argues that (1) Southwick was authorized to move the cremains based on

---

[1] Cremains are human remains that have been cremated.

its own operating rules and (2) the Board incorrectly interpreted and applied the statutes governing plotting cemeteries and moving human remains.[2]

We hold that Southwick's opportunity to argue the applicability of RCW 68.50.140 at a hearing before the Board ultimately satisfied the requirements of procedural due process in this case. And we hold that the Board properly concluded that Southwick violated RCW 68.50.140 but that the Board erred by concluding that Southwick violated RCW 68.24.060. Because the Board did not specify how it reached its determination on sanctions, we remand to the Board to reconsider the appropriate discipline for Southwick's violation of RCW 68.50.140.

FACTS

From 1857 to 1989, Forest Cemetery Association operated Forest Memorial Cemetery (Cemetery) within the City of Olympia (City). In 1947, the Cemetery granted an easement to the City to construct, operate, and maintain a water main. In 1989, the Board granted Southwick authority to operate the Cemetery. Southwick was unaware of the City's easement. Around 2002, Southwick established an urn garden over the City's easement. By 2011, 37 urns containing human cremains were interred within the urn garden.

In 2011, the City notified Southwick that it had violated the terms of the easement by installing encroachments over the easement. The City demanded that any encroachments be

---

[2] Southwick also argues that the Board's order is not supported by substantial evidence. But a challenge based on substantial evidence is a challenge to the findings of fact. And Southwick has never challenged the underlying facts and did not assign error to the Board's findings of fact. Southwick is actually arguing that the uncontested facts do not satisfy the statutes in question. Accordingly, Southwick's challenge is actually a challenge to the Board's application of the law, not to the sufficiency of the evidence supporting the order, and will be addressed as such. Southwick's "substantial evidence" challenge will not be discussed further.

removed from the easement. Between 2013 and 2014, Southwick worked to remove the encroachments from the City's easement. In order to do so, Southwick relocated the urn garden approximately 9 feet from its original location. When relocating the urn garden, Southwick removed 37 urns from their burial place and reburied them in new plot locations. Southwick kept the urns in the same juxtaposition as the original plots. Southwick did not notify the families of the removal, relocation, and reburial of the urns.

The Department served Southwick with a statement of charges alleging unprofessional conduct under RCW 18.235.130.[3] The Department alleged that Southwick violated RCW 68.24.060—amendment of cemetery maps and plats—by replotting the cemetery which resulted in disturbing human remains. The statement of charges also alleged that Southwick moved human remains in violation of RCW 68.50.200, which requires obtaining permission from next of kin to move human remains, and RCW 68.50.220, which provides exceptions to the consent requirement but requires notification to next of kin prior to moving human remains.

Neither party disputed any of the underlying facts. The Department filed a motion for partial summary judgment of all issues except sanctions. Southwick filed its own motion for summary judgment. A presiding officer heard both motions. The presiding officer granted partial summary in favor of the Department based on the following conclusions of law:

---

[3] RCW 18.235.130 defines unprofessional conduct that may be sanctioned including: "Violating any of the provisions of this chapter or the chapters specified in RCW 18.235.020(2) or any rules made by the disciplinary authority under the chapters specified in RCW 18.235.020(2)." RCW 18.235.130(8). Under RCW 18.235.020, cemeteries and funeral homes may be sanctioned for failing to comply with the statutes governing funeral homes and cemeteries in Title 68 RCW.

2. In response to the City's order to remove encroachments from the easement, the Cemetery was surveyed by the City. Pursuant to the survey, the Cemetery was forced to alter the location of the Urn Garden which is contemplated under RCW 68.24.060 moving all the inurnment plots from one location to another. In doing so, the Cemetery was also forced to disturb human remains, so the action was not authorized under RCW 68.24.060.

3. Alternatively, human remains may be removed and moved to a new location within the [C]emetery so long as notice and permission is granted by a surviving relative, or if there is a court order and the surviving relative is notified. RCW 68.50.200; RCW 68.50.210; RCW 68.50.220.

4. In this case, there was a potential for the City of Olympia to obtain a court order, but no order was obtained. Had the City obtained a court order, the Cemetery would still be required to provide notice to a surviving relative under RCW 68.50.220. Without a court order, the Cemetery was required to not only notify, but also to obtain consent, from a surviving relative or the Thurston County Superior Court.

5. Therefore, the Cemetery did not comply with any of the authorizing statutes listed above.

6. The Cemetery is in direct violation of RCW 68.50.140 for unlawful disturbance, removal or sale of human remains.

Administrative Record (AR) at 298-99. The presiding officer concluded that the "act of disturbing human remains without obtaining consent or even notifying the families of the deceased" constituted unprofessional conduct for the purposes of RCW 18.235.130. AR at 299. The presiding officer referred the case to the Board for a hearing on appropriate sanctions.

Before the hearing, Southwick filed a motion for reconsideration of the presiding officer's decision with the Board. In both the motion and argument, Southwick addressed the application of RCW 68.50.140. In its final order, the Board considered Southwick's motion for reconsideration.

The Board then made the following conclusions of law:

4

4.4 On reconsideration, this tribunal finds that RCW 68.50.140 provides a general prohibition against removal of interred human remains. The respondent removed the interred human remains of 37 people and so has violated RCW 68.50.140, unless one of two potentially applicable exceptions applies.

4.5 One potential exception to the general prohibition is codified in RCW 68.50.200, which allows interred remains to be moved so long as consent for removal is obtained from next of kin. In this case, the Respondent failed to get consent of next of kin prior to removing the interred human remains and so did not meet the requirements of this exception.

4.6 The other potential exception to the general prohibition is codified in RCW 68.50.220, which provides that a cemetery authority may move interred remains in response to a court order. However, even when a court order is obtained, the next of kin must be notified. In this case, there was no court order requiring Respondent to remove the interred remains. Further, Respondent did nothing to notify the next of kin. Therefore, this exception does not apply.

4.7 Respondent also violated RCW 68.24.060 because it moved plot locations but failed to amend the plot map associated with that move. Respondent constructively amended the plot map by moving the plot locations and further violated RCW 68.24.060 when it moved human remains in the process of altering the plot locations.

AR at 7-8. Based on Southwick's violations, the Board concluded that Southwick had engaged in unprofessional conduct under RCW 18.235.130(8). The Board sanctioned Southwick $7,500, required Southwick to attempt notification of all next of kin, and required Southwick to place an appropriate notice in the local newspaper for three days.

Southwick appealed the Board's final order to the Thurston County Superior Court. The superior court affirmed the Board's final order. Southwick appeals.

ANALYSIS

I. STANDARD OF REVIEW

Our review of agency action is governed by the Administrative Procedure Act, chapter 34.05 RCW. We review the Board's final order, not the presiding officer's decision or the superior

court's order. *Olympic Healthcare Servs. II, LLC v. Dep't. of Soc. & Health Servs.*, 175 Wn. App. 174, 181, 304 P.3d 491 (2013). We will grant relief from an agency action order if the order is unconstitutional, the agency erroneously interpreted or applied the law, or the order is not supported by substantial evidence. RCW 34.05.570(3)(a), (d), (e). The party challenging an agency action bears the burden of demonstrating the invalidity of the agency action. RCW 34.05.570(1)(a).

We review the Board's findings of fact for substantial evidence and review the Board's conclusions of law de novo. *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 895-96, 357 P.3d 59 (2015). Unchallenged findings of fact are verities on appeal. *Porter Law Ctr., LLC v. Dep't of Fin. Insts., Div. of Consumer Servs.*, 196 Wn. App. 1, 13, 385 P.3d 146 (2016). Southwick has never challenged or disputed any of the Board's findings of fact. Accordingly, we treat the Board's findings of fact as verities on appeal.

## II. PROCEDURAL DUE PROCESS

Southwick argues that the Board's order is unconstitutional because it violates Southwick's right to procedural due process. We hold that Southwick's opportunity to argue the issue at a hearing before the Board ultimately satisfied the requirements of procedural due process in this case.

Both the federal and state constitutions guarantee an individual procedural due process when the State deprives an individual of life, liberty, or property. *Alvarado v. Dep't of Licensing*, 193 Wn. App. 171, 176-77, 371 P.3d 549 (2016). Fundamentally, procedural due process requires notice and an opportunity to be heard. *Alvarado*, 193 Wn. App. at 177. More than mere formalities, "[d]ue process must be 'meaningful and appropriate to the nature of the case.'"

*Alvarado*, 193 Wn. App. at 177 (quoting *Svengard v. Dep't of Licensing*, 122 Wn. App. 670, 681, 95 P.3d 364 (2004)).

It is undisputed that the Department did not allege a violation of RCW 68.50.140 in the statement of charges against Southwick and that Southwick did not have notice or the opportunity to present argument regarding RCW 68.50.140 before the presiding officer. Therefore, the presiding officer's order, standing alone, would violate the fundamental requirements of procedural due process.

However, we review the Board's final order, not the presiding officer's order. The Board considered Southwick's motion for reconsideration and allowed full briefing and argument regarding RCW 68.50.140. Thus, as it relates to the Board's order, Southwick received notice of the potential violation of RCW 68.50.140 from the presiding officer's order. And Southwick had a meaningful opportunity to be heard on the issue before the Board because it was able to brief and argue the applicability of RCW 68.50.140 to the undisputed facts. Accordingly, the fundamental requirements of procedural due process have been satisfied with the Board's final order.

Southwick argues that the opportunity to be heard before the Board does not satisfy the requirements of procedural due process because the hearing before the Board was a motion to reconsider, which shifts the burden to Southwick. But procedural due process considers whether the process is meaningful and appropriate within the context of the case. *Alvarado*, 193 Wn. App. at 177. Within the context of this case, where there were no disputed facts, the opportunity to brief and argue a purely legal issue is a meaningful and appropriate opportunity to be heard because

Southwick was able to fully present its case before the Board. Therefore, the Board's final order complies with the requirements of procedural due process and is not unconstitutional.

III. STATUTORY VIOLATIONS

Southwick argues that the Board erred when it concluded that Southwick violated RCW 68.50.140 and RCW 68.24.060. We hold that the Board did not err by concluding that Southwick violated RCW 68.50.140 by unlawfully disturbing human remains. However, we hold that the Board did err by concluding that Southwick violated RCW 68.24.060 by amending the cemetery plat map.

The Board's conclusions are based on its interpretation of the applicable statutes. Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The purpose of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, we first look to the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. *Gray*, 181 Wn.2d at 339.

A. RCW 68.50.140—Unlawful disturbance, removal, or sale of human remains

RCW 68.50.140 states, in relevant part:

> (4) Every person who removes, disinters, or mutilates human remains from a place of interment, without authority of law, is guilty of a class C felony.

The Board concluded that RCW 68.50.140 "provides a general prohibition against removal of interred human remains . . . unless one of two potentially applicable exceptions applies." AR at 7.

Southwick argues that the Board erred by interpreting RCW 68.50.140 as a general prohibition against removal of human remains.

But the Board did not conclude that RCW 68.50.140 was a general prohibition against removal of human remains: the Board concluded that RCW 68.50.140 is a general prohibition against removal of human remain *subject to certain exceptions*. This is exactly what the plain language of the statute provides. RCW 68.50.140(4) prohibits removal, disinterment, and mutilation of human remains without authority of law. Therefore, the plain language of the statute establishes that removal of human remains is generally prohibited unless a person has authority of law. Specific statutes that permit removal of human remains provide the authority of law. Accordingly, "authority of law" is the exception to the general prohibition against removal of human remains. The Board correctly interpreted RCW 68.50.140 to prohibit removal of human remains unless a specific statutory exception applied which provided the authority of law to remove the remains.

There is no dispute that Southwick disinterred human remains. However, Southwick argues that (1) it did not disinter human remains from "a place of interment" and (2) it acted with the authority of law. Br. of App. at 21.

Southwick argues that it did not disinter human remains from a place of interment because RCW 68.04.100 defines "interment" as "the placement of human remains in a cemetery." Br. of App. at 21. Based on this definition, Southwick argues that to remove human remains from the "place of interment" means removing the human remains from the cemetery boundaries rather than moving human remains from a specific plot in a cemetery to a different plot. Southwick's argument is unpersuasive because "place of interment" is more specific than interment and because

when read together with RCW 68.50.220, it is clear that the legislature intended "place of interment" to refer to the plot in which human remains were interred rather than the cemetery.

The definition of interment in RCW 68.04.100 is essentially defining an action—what it means to inter remains (although it obscures this concept by nominalizing a verb). But RCW 68.50.140 uses the whole phrase "place of interment," the plain language of which means the place where human remains are interred or placed in a cemetery. Therefore, "place of interment" refers to the specific plot or place where the human remains were placed. Because Southwick removed human remains from one plot and reinterred them to a different plot, Southwick removed the human remains from a "place of interment."

Even if Southwick's interpretation of "place of interment" based on RCW 68.04.100 is correct, RCW 68.04.100 provides a general definition of interment which conflicts with the more specific application of the concept in RCW 68.50.220. RCW 68.50.220 states:

> RCW 68.50.200 and RCW 68.50.210 do not apply to or prohibit the removal of any human remains from one plot to another in the same cemetery or the removal of [human] remains by a cemetery authority from a plot for which the purchase price is past due and unpaid, to some other suitable place; nor do they apply to the disinterment of human remains upon order of court or coroner. However, a cemetery authority shall provide notification to the person cited in RCW 68.50.200 before moving human remains.

As the Board concluded, RCW 68.50.220 is one statute which provides the authority of law authorizing the removal or disinterment of human remains. And RCW 68.50.220 directly addresses moving human remains from one plot to another in the same cemetery.

We read statutes relating to the same subject together. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 412, 377 P.3d 199 (2016). Statutes should be read to complement each other but where there appears to be a conflict, we give preference to the more specific statute. *Lenander*,

186 Wn.2d at 412. Because RCW 68.50.220 is a very specific statute governing the legal authority and requirements for moving human remains from one plot to another within the same cemetery, it must control over a general definition of interment. Therefore, to the extent RCW 68.50.140 refers to the authority of law to remove human remains from a place of interment, it must be read to include moving remains from one plot to another as addressed in RCW 68.50.220.

Southwick also argues that it did not act "without authority of law" because RCW 68.24.110 authorized Southwick to create its own rules and gave it the right to correct errors in making interments. Although Southwick may have statutory authority to enact its own internal rules and regulations, the rules and regulations themselves are not the law. Accordingly, Southwick's internal rules and regulations do not provide the "authority of law" required by RCW 68.50.140.[4]

Here, the Board properly interpreted RCW 68.50.140 as a general prohibition against disturbing human remains unless certain exceptions provided the cemetery with the authority of law. And the Board properly applied RCW 68.50.140 to conclude that Southwick improperly removed human remains. Therefore, the Board did not erroneously interpret or apply RCW 68.50.140. Because the Board correctly interpreted and applied RCW 68.50.140, it properly concluded that Southwick violated RCW 68.50.140.

B. RCW 68.24.060—Maps and Plats

---

[4] In its final order, the Board recognized that there were two statutory exceptions to RCW 68.50.140 which provide the authority of law to remove human remains: RCW 68.50.200 and RCW 68.50.220. And the Board concluded that Southwick did not meet the requirements of either statute, and therefore, Southwick acted without authority of law. Southwick does not address the Board's application of either statute.

RCW 68.24.060 states:

> Any part or subdivision of the property so mapped and plotted may, by order of the directors, be resurveyed and altered in shape and size and an amended map or plat filed, so long as such change does not disturb the interred remains of any deceased person.

Southwick argues that the Board erred because the findings of fact do not support its conclusion that Southwick violated RCW 68.24.060. Based on the plain language of the statute, RCW 68.24.060 applies to resurveying a mapped and plotted part or subdivision, altering in size and shape, and amending the map or plat. Southwick did not take any of these actions and there are no findings of fact relating to this issue. Moreover, the record does not establish that the Cemetery was mapped and plotted for the purposes of the statute. Accordingly, the findings of fact do not support the Board's conclusion that Southwick violated RCW 68.24.060.

## ATTORNEY FEES

Southwick requests an award of attorney fees and costs under RCW 4.84.350. Under RCW 4.84.350(1), a court awards attorney fees and other expenses to a qualified party that prevails on judicial review of an agency action, unless we find that the agency action was substantially justified or that circumstances make an award unjust. *ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n*, 151 Wn. App. 788, 812, 214 P.3d 938 (2009), *aff'd*, 173 Wn.2d 608 (2012). Here, Southwick is not the substantially prevailing party. Accordingly, Southwick is not entitled to attorney fees and costs on appeal.

CONCLUSION

We hold that Southwick's opportunity to argue the issue at a hearing before the Board ultimately satisfied the requirements of procedural due process in this case. And we hold that the Board properly concluded that Southwick violated RCW 68.50.140 but that the Board erred by concluding that Southwick violated RCW 68.24.060. Because the Board did not specify how it reached its determination on sanctions, we remand to the Board to reconsider the appropriate discipline for Southwick's violation of RCW 68.50.140.

We affirm the Board's order in part, reverse in part, and remand to the Board to reconsider sanctions.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.